TOLSON ET AL., APPELLANTS, *v.* CITY OF OREGON, APPELLEE.

[Cite as Tolson v. Oregon (1976), 53 Ohio App. 2d 183.]

(No. L-75-236—Decided March 29, 1976.)

*Mr. Charles E. Breese,* for appellants.
*Mr. Robert Dorrell,* for appellee.

WILEY, J. An appeal was taken by the plaintiffs Harvey and Marilyn Tolson from a judgment of the Lucas County Court of Common Pleas affirming the final adjudication by ordinance of the City Council of Oregon, Ohio, which approved the recommendation of the Assessment Equalization Board, appointed pursuant to R. C. 727.16, that any adjustment to the amount assessed against plaintiffs' land, parcel No. 24264 of Taxing District 44, be denied.

184

In the Court of Common Pleas, defendant, the city of Oregon, filed a motion to dismiss the appeal of the plaintiffs taken pursuant to R. C. 2506.01 from the adjudication by the aforementioned ordinance. By consent of counsel for both parties, the court overruled defendant's motion. In defendant's motion, the issue was raised that the Court of Common Pleas lacked jurisdiction over the subject matter of plaintiffs' appeal. Defendant contended that the ordinance passed by the Oregon City Council was not a "final order, adjudication or decision," a requirement of R. C. 2506.01 necessary to invoke the jurisdiction of the Court of Common Pleas under R. C. Chapter 2506. The defendant contended it was not a final order in that the council must subsequently adopt an ordinance to determine whether to proceed with the project. (R. C. 727.23.)

The duty of the Assessment Equalization Board is to determine whether the complaining property owner's land will benefit from the improvement and, if so, to what extent. R. C. 727.17; see 49 Ohio Jurisprudence 2d 329, Special Assessments, Section 64. These determinations necessarily involve questions of fact, e. g., the extent to which complainant's property benefits by the improvement in relation to other property similarly assessed. The Oregon City Council, by its approval of the board's recommendation, made a final determination of the benefit to plaintiffs of the improvement vis-a-vis other property owners similarly assessed, even though the council still had to determine by ordinance whether to proceed with the assessment and even though the total cost of the improvement was subject to revision. R. C. 727.23. The ordinance approving the findings of the Assessment Equalization Board that any adjustment to the amount assessed against plaintiffs be denied was, therefore, a "final order, adjudication, or decision" within the purview of Chapter 2506 of the Revised Code.[1]

The resolution of necessity, declaring it necessary to improve Dustin Road, resolved that the cost of the im-

[1]See the unreported opinion of this court in Simon v. City of Maumee, Lucas County No. 7041, decided January 18, 1972.

provements should be assessed "in proportion to the benefits which may result from the improvements" upon lots determined to be specially benefited by the improvements. R. C. 727.12 requires that a resolution of necessity shall:

"(D) State whether the method of levying the special assessments shall be:

"(1) By a percentage of the tax value of the property assessed;

"(2) In proportion to the benefits which may result from the improvement;

"(3) By the foot front of the property bounding and abutting upon the improvement * * *."

The record of the hearing before the Assessment Equalization Board and the record of the trial in the Court of Common Pleas, including exhibit 7, the "Dustin storm sewer and pavement final assessment," reveal that no attempt was made by the city of Oregon to apportion the cost of the project in a manner that would reflect the special benefit to appellants' parcel of land in proportion to the whole of the special benefits conferred by the improvement. See the discussion of the proportion method of assessment in *Chamberlain* v. *City of Cleveland* (1878), 34 Ohio St. 551. "An assessment in proportion to benefits involves a determination of the amount of benefit to be obtained by each property." *Schiff* v. *City of Columbus* (1965), 4 Ohio App. 2d 234, 239, reversed on other grounds, 9 Ohio St. 2d 31.

Appellants were assessed on the basis of 255 feet of front footage, abutting the improvements, at $85.24 per front foot. The cost per foot was determined by dividing the total amount of footage fronting the improvement into the total cost of the project. The mere fact that assessments are in proportion to the front footage does not indicate that assessments were made on a front-foot basis instead of in proportion to the benefits. *Schiff* v. *City of Columbus, supra.* However, appellants introduced evidence, at the trial in the Court of Common Pleas, that the appellants' parcel would not receive comparable benefits from the improvement.

Appellants are the owners of a parcel of real estate

which fronts on Navarre Avenue and, as a result of the project, also abuts on Isaacs Street Drive, which is a part of the project. The map of the project, joint exhibit No. 2, shows that the depths of the involved parcels fronting on Navarre Avenue varied greatly.

Two real estate appraisers testified as expert witnesses. Paul J. Burnor was called by the plaintiffs and John J. McGowan was called by the city of Oregon. Both appraisers testified that prior to the Dustin Road Project the plaintiffs' parcel was fully developed and consisted of two buildings occupied under leases by persons using them for medical and dental offices and a pharmacy. They further testified that there has been no change in the use of such parcel since the road and drainage improvements were installed and that the parcel is and has been utilized to its highest and best use.

Both appraisers agreed that the construction of Dustin Road and Isaacs Street Drive resulted in a significant change in the highest and best use as to all the other parcels in the project. As to all such other parcels, the roads gave new frontage and changed the highest and best use of a portion of these parcels from agricultural to commercial. Mr. McGowan testified that the projects raised the fair market value of these lands with new frontage from $5,000 an acre to between $18,000 and $20,000 an acre.

Mr. McGowan also testified that the Dustin Road Project increased the present fair market value of the 2-acre Tolson parcel to $6,500. Mr. Burnor testified that the fair market value of the Tolson parcel was increased by an amount not in excess of $6,200 by the improvement.

Mr. Burnor also testified that the building, land, driveways and parking areas of the Tolson parcel are adequately drained into the previously established Navarre Avenue storm sewer system and that the project storm sewer improvement is of no benefit to the Tolson parcel. Mr. Burnor was of the opinion that Isaacs Street Drive was no more than a service road to the Tolson parcel and of minimal benefit, which would not increase the income of that parcel.

Mr. Gross, Safety-Service Director for the city of Oregon, testified that the engineers who designed the project based the storm sewer system and roadways on the future projected commercial use of the land abutting the improvement.

In response to a subpoena issued to Mr. Gross to produce true copies of all studies, computations and schedules prepared by or for the city of Oregon determining the special benefits received by each of the parcels of land to be assessed for the construction of the Dustin Road project, Mr. Gross produced no documents and admitted that no determinations of special benefits were made by the city of Oregon relative to the project. Mr. Gross also testified that no attempt was made by the city of Oregon to allocate the aforesaid figures between the cost of the road improvements and the cost of the drainage improvements. Nor did the final assessment make any distinction between parcels fronting entirely upon the road improvement and those parcels where the road improvements are merely side streets.

Mr. Gross also testified that the majority of landowners abutting the project were assessed at the rate of $64.51 per foot for the frontage abutting a 28 foot roadway. The plaintiffs were assessed at the rate of $85.24 for land abutting on a 37 foot roadway which included a left-hand turn lane onto Navarre Avenue.

The fourth paragraph of the syllabus of *Schiff* v. *City of Columbus* (1967), 9 Ohio St. 2d 31, reads as follows:

"The enhancement in the value of the property that results from a public improvement is the specal benefit that will support an assessment against that property to pay for the improvement. Such enhancement in value of such property is a benefit to its owner that accrued to him and not to the public or to the rest of the community."

The evidence establishes that the plaintiffs' parcel was enhanced by the Dustin Road project to the extent of $6,350, the average increase in the fair market value of

the property between the estimates given by the two expert witnesses at trial.[2]

The evidence further establishes that the final assessment against the plaintiffs in the amount of $21,737.26 was unconstitutional, illegal, arbitrary, unreasonable and unsupported by the preponderance of substantial, reliable and probative evidence on the whole record.

The opinion by Chief Justice Taft in *Schiff*, approved and quoted from the opinion by Judge Minshall in *Walsh* v. *Barron* (1899), 61 Ohio St. 15, wherein it was stated that more than the value of the entire benefits conferred cannot be exacted without impairing the inviolability of private property guaranteed by the Constitution. The present value of the benefits conferred to the plaintiffs' parcel of land was established by the evidence as no more than $6,500 by the city of Oregon's own witness.

The trial court, in its judgment entry on appeal (of October 22, 1975), found that the "corner influence" created by the improvement conferred a substantial benefit among other benefits to the property of appellants. The city of Oregon argued that the creation of Isaac Street off Navarre Avenue would permit a new and easier means of ingress and egress from Isaacs Street to the plaintiffs' land. Mr. Burnor testified that the Isaacs Street entrance to the Tolson parcel was only of minimal benefit and would only be used as a service drive. Two driveways off of Navarre Avenue still exist after the improvement and would be the principal means of egress and ingress to the property. The access from Isaacs Street to the Tolson parcel would be of minimal benefit to appellants in that traffic from the property abutting the Lustin Project or coming from Coy Road through the project and into Navarre would be minimal as compared with the

---

[2]Compare this case with *Schiff*, *supra*, where the Supreme Court of Ohio found that the plaintiffs offered no evidence as to the value of their lots either before or after the improvement. The court implied that had there been such evidence, it would have been possible to determine whether the value of the particular special benefit to the lots of the plaintiffs was equal to or greater than the amount of the assessment against it. 9 Ohio St. 2d at 39 and 40.

traffic from Navarre Avenue, the major artery through the city of Oregon. Moreover, it was brought out in the hearing before the Assessment Equalization Board that prior improvements made by the Tolsons to their land, to the extent of $70,000, cut down the size of the pharmacy to allow more space for medical offices. It is obvious that the pharmacy received the greater part of its business from the patients of the medical professionals who have offices on the Tolson parcel and from St. Charles Hospital located off Navarre Avenue to the east of the Dustin Road Project. The "corner influence" is of little benefit, therefore, to the Tolson parcel.

It is arbitrary and unreasonable for a civil authority, under the pretense of levying an assessment according to benefits, to make, in effect, no such apportionment, but simply divide the cost of the improvement by the number of feet abutting thereon, regardless of the relative value of each lot after the improvement was made. *Nulsen v. City of Cincinnati* (1905), 5 C. C. (N.S.) 679.

The uncontroverted testimony of Mr. Burnor, who made a study of the Tolson parcel, established that the Navarre Avenue storm sewer system, for which the plaintiffs had been earlier assessed, provided adequate drainage for the Tolson parcel. R. C. 727.03 provides that lands provided with adequate drainage shall not be assessed for the construction of main sewers. No determination was made by the city of Oregon as to the adequacy of the drainage off the Tolson parcel into the Navarre Avenue sewer system, nor was there a breakdown of costs made between the pavement improvements and the sewer improvements with regard to the Dustin Project.

For the above reasons, assignments of error 2 through 6 are well taken. Assignment of error 1 states:

"First Assignment of Error. The trial court erred substantially to the prejudice of the appellant in prohibiting evidence to be entered into the record relating to the final assessment for the Dustin Road project made by the city of Oregon against the K-Mart Real Estate (Parcel No. 24061)."

It is not well taken. Civ. R. 61; see the cases cited in

190

footnotes 16 and 17 accompanying the text of 4 Ohio Jurisprudence 2d 122, Appellate Review, Section 893.

It is, therefore, adjudged and ordered that the judgment of the court of Common Pleas of Lucas County, entered on October 22, 1975, be and the same is hereby reversed and held for naught, and the court coming to render the judgment which the court below ought to have rendered, it is hereby ordered and adjudged that the assessment against the appellants be and hereby is reduced to the sum of $6,350. App. R. 12(B), (C).

*Judgment reversed.*

BROWN, P. J., and POTTER, J., concur.